UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JAMIE MARTELLI, individually and on behalf of all others similarly situated,

                Plaintiff,

-against-

RITE AID CORPORATION,

                Defendant.

**OPINION AND ORDER**

21-CV-10079 (PMH)

---

Jamie Martelli ("Plaintiff") brings this putative class action against Rite Aid Corporation ("Defendant") alleging that the labeling on Defendant's "Toddler Beginnings" transition formula is deceptive and misleading. (Doc. 1, "Compl."). Plaintiff asserts a claim for relief for violations of New York General Business Law ("GBL") §§ 349 and 350.[1]

Before the Court is Defendant's motion to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). Defendant moved to dismiss on July 15, 2022, in accordance with the briefing schedule set by the Court. (Doc. 14). Defendant filed a memorandum of law in support of its motion (Doc. 15, "Def. Br."), Plaintiff filed a memorandum of law in opposition (Doc. 16, "Pl. Br."), and the motion was fully submitted upon the filing of Defendant's reply.[2] (Doc. 18).

---

[1] Plaintiff initially also pressed claims for violation of state consumer fraud acts, breach of warranty, negligent misrepresentation, fraud, and unjust enrichment. (Compl. ¶¶ 85-107). However, at the June 9, 2022 pre-motion conference regarding the filing of the instant motion, Plaintiff's counsel represented to the Court that he intended to withdraw his request for injunctive relief as well as all claims for relief except for those brought under the GBL. Accordingly, "[b]ased on Plaintiff's counsel's representation [made to the Court during the pre-motion conference], the Court directed Plaintiff to prepare and send to Defendant for review a proposed order and stipulation withdrawing from the complaint all claims except for those made pursuant to NY GBL § 349 and 350, and any references to injunctive relief." (*See* Dkt., 6/10/2022 Minute Entry). Plaintiff withdrew all his claims, except those brought under the GBL, as well as his request for injunctive relief. (Doc. 12).

[2] Defendant also filed a document entitled "Request for Judicial Notice in Support of [Defendant's] Motion to Dismiss Plaintiff's Class Action Complaint." (Doc. 17, "RJN"). Defendant asks the Court to take judicial notice of three exhibits pursuant to Federal Rule of Evidence 201: Exhibit 1, a copy of the Toddler Beginnings product label referenced throughout the Complaint; Exhibit 2, a copy of a guidance document

For the reasons set forth below, Defendant's motion is GRANTED and the Complaint is dismissed with prejudice.

## BACKGROUND

Defendant manufactures, labels, markets, and sells the "Toddler Beginnings" transition formula under the "Tugaboos" brand. (Compl. ¶ 1). While infant formulas are an "alternative where breastfeeding is not an option for children 0-12 months," transition formulas such as Toddler Beginnings are marketed "to be used to fill 'nutrition gaps,' [for children] beyond 12 months." (*Id.* ¶¶ 4-6). Plaintiff alleges that the Toddler Beginnings label misled her into believing that the product "is nutritionally adequate for children over a year." (*Id.* ¶ 17).

I.   The Label

The front panel of Toddler Beginnings label identifies the product as intended for children between "9-18 months" and describes the product as "infant formula with iron" and a "milk-based powder." (RJN, Ex. 1). The front panel touts the benefits of the transition formula by representing that it contains "DHA, iron & choline to help nourish the brain" and that it provides "balanced nutrition." (*Id.*). The front panel also includes a representation identifying the product as "Non-GMO" with language directly below which reads "Ingredients Not Genetically Engineered." (*Id.*).

---

issued by the Food and Drug Administration ("FDA") titled "Labeling of Infant Formula: Guidance of Industry" dated September 2016; and Exhibit 3, a copy of a publication issued by the World Health Organization ("WHO") titled "Information Concerning the Use and Marketing of Follow-Up Formula" dated July 17, 2013. (*Id.*). Although Defendant's request for judicial notice is unopposed, the Court may and does properly consider Exhibits 1 and 3 as "documents incorporated by reference in the complaint." *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010). Alternatively, the Court may and does take judicial notice of Exhibits 1-3 only to the extent necessary to resolve the instant motion. *See Klausner v. Annie's, Inc.*, 581 F. Supp. 3d 538, 545 (S.D.N.Y. 2022) (taking judicial notice of product label images); *Gordon v. Target Corp.*, No. 20-CV-09589, 2022 WL 836773, at *2 (S.D.N.Y. Mar. 18, 2022) (taking judicial notice of FDA guidance documents and noting that "courts routinely take judicial notice" of such documents); *Dumitrescu v. Gen. Mar. Mgmt., Inc.*, No. 08-CV-05461, 2009 WL 4823945, at *4 (S.D.N.Y. Dec. 15, 2009) (taking judicial notice of life expectancy analysis published by the WHO).



(RJN, Ex. 1). The back panel of the label contains disclosures regarding the nutritional information and ingredients of the product, including the amounts of protein, fat, carbohydrates, and water contained in a serving of the transition formula. (*Id.*). The side panel discloses that Toddler Beginnings "is intended to supplement the solid-food portion of the older baby's diet" and "is not intended to replace breast milk or starter formulas." (*Id.*).

Plaintiff alleges that contrary to the representations on the label, Toddler Beginnings is nutritionally inadequate for children because: (i) it contains added sugars; and (ii) it contains less protein, more carbohydrates, and more fat than cow's milk. (Compl. ¶¶ 20-22).

II.     Plaintiff's Purchase

Plaintiff alleges that she "purchased the Product on one or more occasions . . . from the Defendant's stores including the location at 709 Main Street Poughkeepsie, NY 12601, in 2019 and/or 2020, among other times." (Compl. ¶ 60). Plaintiff alleges that she read and relied "on the words and images" on the product label and bought the product "because she expected it was nutritionally appropriate for children in the age range identified." (*Id.* ¶¶ 61-62). Finally, Plaintiff alleges that she "would not have purchased the Product if she knew the representations and omissions were false and misleading or would have paid less for it." (*Id.* ¶ 64).

## STANDARD OF REVIEW

On a Rule 12(b)(6) motion, a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible on its face "when the ple[d] factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant acted unlawfully." *Id.* The factual allegations pled "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"When there are well-ple[d] factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. Thus, the Court must "consider the legal sufficiency of the complaint, taking its factual allegations to be true and drawing all reasonable inferences in the plaintiff's favor." *Harris v. Mills*, 572 F.3d

4

66, 71 (2d Cir. 2009). The presumption of truth, however, "'is inapplicable to legal conclusions,' and '[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.'" *Id.* at 72 (quoting *Iqbal*, 556 U.S. at 678 (alteration in original)). "Furthermore, where 'the allegations of [a] [c]omplaint are materially inconsistent with the' evidence a plaintiff relies on to make those allegations, we may 'easily conclude that [p]laintiffs' claims lack the facial plausibility necessary to survive a motion to dismiss.'" *Axon v. Florida's Nat. Growers, Inc.*, 813 F. App'x 701, 704 (2d Cir. 2020) (quoting *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013)). Therefore, a plaintiff must provide "more than labels and conclusions" to show entitlement to relief. *Twombly*, 550 U.S. at 555.

## ANALYSIS

I.  New York General Business Law Sections 349 and 350

Plaintiff's sole claim for relief alleges violations of GBL §§ 349 and 350. (Compl. ¶¶ 77-84). "Section 349 'prohibits deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state.'" *Shakespeare v. Compu-Link Corp.*, 848 F. App'x 474, 476 (2d Cir. 2021) (quoting *Orlander v. Staples, Inc.*, 802 F.3d 289, 300 (2d Cir. 2015)). Section 350 "prohibits false advertising in the conduct of any business, trade or commerce or in the furnishing of any service in this state." *Orlander*, 802 F.3d at 300 (cleaned up). "'The standard for recovery under . . . § 350, while specific to false advertising, is otherwise identical to 349,' and therefore the Court will merge its analysis of the two claims." *Cosgrove v. Oregon Chai, Inc.*, 520 F. Supp. 3d 562 (S.D.N.Y. 2021) (quoting *Goshen v. Mut. Life Ins. Co. of N.Y.*, 774 N.E.2d 1190 (N.Y. 2002)); *see also Housey v. Proctor & Gamble Co.*, No. 22-888, 2022 WL 17844403, at *1 (2d Cir. Dec. 22, 2022) ("Section 350 of the GBL prohibits false advertising in the conduct of any business, trade or commerce, and is analyzed under the same reasonable consumer standard as Section 349").

"To successfully assert a claim under either section, 'a plaintiff must allege that a defendant has engaged in (1) consumer-oriented conduct that is (2) materially misleading and that (3) plaintiff suffered injury as a result of the allegedly deceptive act or practice.'" *Orlander*, 802 F.3d at 300 (quoting *Koch v. Acker, Merrall & Condit Co.*, 967 N.E.2d 675 (N.Y. 2012)). "[T]he New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" *Id.* "It is well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fink v. Time Warner Cable*, 714 F.3d 739, 741 (2d Cir. 2013). To satisfy the reasonable consumer standard at the pleading stage, "plaintiffs must do more than plausibly allege that a label might conceivably be misunderstood by some few consumers. Instead, Plaintiffs must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Campbell v. Whole Foods Mkt. Grp., Inc.*, 516 F. Supp. 3d 370, 381 (S.D.N.Y. 2021) (cleaned up). Defendant raises two arguments relevant to Plaintiff's GBL claims: (i) Plaintiff has not suffered an injury; and (ii) the Toddler Beginnings label is not materially misleading. The Court will address these arguments *seriatim*.

    A.    <u>Injury</u>

To plead an injury pursuant to either §§ 349 or 350, "a plaintiff must allege that, on account of a materially misleading practice, she purchased a product and did not receive the full value of her purchase." *Orlander*, 802 F.3d at 302. "In the consumer goods context, an allegation of a defendant's deception alone does not suffice to plead injury, because a plaintiff may have received the benefit of the bargain despite the alleged misrepresentation." *Colpitts v. Blue Diamond Growers*, 527 F. Supp. 3d 562, 576 (S.D.N.Y. 2021). Instead, a plaintiff "must plead something

more than the defendant's deception; for example, that the price of the product was inflated as a result of defendant's deception or that use of the product adversely affected plaintiff's health." *Preira v. Bancorp Bank*, 885 F. Supp. 2d 672, 676-77 (S.D.N.Y. 2012) (cleaned up).

An injury under §§ 349 and 350 therefore may be alleged under a price premium theory whereby a plaintiff claims to have paid more for the product than he or she would have paid if the defendant did not engage in allegedly deceptive practices. *See e.g., Orlander*, 802 F.3d at 302; *Duran v. Henkel of Am., Inc.*, 450 F. Supp. 3d 337, 350-51 (S.D.N.Y. 2020). A price premium theory requires a plaintiff to "allege that a company marketed a product as having a unique quality, that the marketing allowed the company to charge a price premium for the product, and that the plaintiff paid the premium and later learned that the product did not, in fact, have the marketed quality." *Duran*, 450 F. Supp. 3d at 350 (cleaned up). To allege injury under a price premium theory, a plaintiff must allege not only that [the] defendants charged a price premium, but also that there is a connection between the misrepresentation and any harm from, or failure of, the product." *Id.* (quotation marks omitted); *see also Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009) ("In order to make a claim under [GBL], a plaintiff must plead reliance on a false advertisement at the time the product was purchased." (citing *Andrew Strishak & Assocs., P.C. v. Hewlett Packard Co.*, 752 N.Y.S.2d 400, 403 (App. Div. 2002))).

Plaintiff alleges that Toddler Beginnings "is sold for a price premium compared to other similar products, no less than approximately $17.99 for 20 oz (576 g), a higher price than it would otherwise be sold for, absent the misleading representations and omissions." (Compl. ¶ 36). Plaintiff further alleges that she "relied on the representations that [Toddler Beginnings] was nutritionally appropriate for children in the age range identified" and that she "would not have purchased" or would not have "paid as much if the true facts had been known, suffering damages."

7

(*Id.* ¶¶ 83-84). The court in *Gordon v. Target Corp.*, No. 20-CV-9589, 2022 WL 836773 (S.D.N.Y. Mar. 18, 2022), addressed virtually identical claims to those at issue herein. The plaintiff in *Gordon* alleged that the labeling of Target's transition formula misled consumers into believing that the product was "nutritionally adequate for children over one year of age." *Id.* at *4. Judge Karas held that the plaintiff in *Gordon* failed to allege injury with respect to her GBL claim because she only "vaguely" alleged that she relied on the representations on the label and failed to "identify a single 'specific advertisement or public pronouncement' on which she relied in purchasing the Product." *Id.* at *13 (quoting *Sabatano v. Iovate Health Scis. U.S.A. Inc.*, No. 19-CV-08924, 2020 WL 3415252, at *3 (S.D.N.Y. June 22, 2020)).

The same is true here. Plaintiff alleges in a conclusory fashion that she "relied on the words and images on the Product, on the labeling and/or claims made by Defendant in digital and/or social media." (Compl. ¶ 62). However, as in *Gordon*, Plaintiff fails to state which specific representations on the Toddler Beginnings labeling or advertising she relied on when making her purchase. Accordingly, Plaintiff has failed to sufficiently plead an injury in connection with her claim alleging violations of GBL §§ 349 and 350. *See Horowitz*, 613 F. Supp. 2d at 288 (dismissing GBL claims because the plaintiff "never specifies what false representations defendants made nor does she allege that she ever relied on any representations made by defendants"). That claim therefore fails and is dismissed.

    B.    <u>Materially Misleading</u>

Equally, even if Plaintiff were able to show an injury—which she is not—the Plaintiff's GBL claim would fail separately because the label at issue is not materially misleading. "[I]n determining whether a reasonable consumer would have been misled by a [product label], context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013) (per curiam). "For

example, under certain circumstances, the presence of a disclaimer or similar clarifying language may defeat a claim of deception." *Id.* Courts must therefore "consider the challenged [label] as a whole, including disclaimers and qualifying language." *Mantikas v. Kellogg Co.*, 910 F.3d 633, 636 (2d Cir. 2018); *see also Hoffmann v. Kashi Sales, L.L.C.*, No. 21-CV-09642, 2022 WL 17823171, at *3 (S.D.N.Y. Dec. 20, 2022) ("courts assess each allegedly misleading statement in light of its context on the product label or advertisement as a whole, contemplating the entire mosaic rather than each tile separately"). "If a plaintiff alleges that an element of a product's label is misleading, but another portion of the label would dispel the confusion, the court should ask whether the misleading element is ambiguous. If so, the clarification can defeat the claim." *Reyes v. Crystal Farms Refrigerated Distrib. Co.*, No. 18-CV-02250, 2019 WL 3409883, at *3 (E.D.N.Y. July 26, 2019); *see also Melendez v. ONE Brands, LLC*, No. 18-CV-06650, 2020 WL 1283793, at *7 (E.D.N.Y. Mar. 16, 2020) (dismissing false advertising claims alleging GBL §§ 349 and 350 violations where "any potential ambiguity created by the front label regarding the bars' carbohydrate and caloric contents is readily clarified by the back panel of the bars' packaging.").

Plaintiff alleges that the Toddler Beginnings label was deceptive for three reasons: (i) the label is confusingly similar to Defendant's infant formula label, thereby giving consumers "the incorrect impression that the formula is nutritionally adequate for children over a year" (Compl. ¶¶ 8-18); (ii) the label misleads consumers into believing that the product has a nutritional value comparable to cow's milk (*id.* ¶¶ 19-28); and (ii) the label's "Non-GMO" representation is misleading (*id.* ¶ 29). The Court addresses each of these theories in turn.

1. Similarity to Defendant's Infant Formula

Plaintiff alleges that caregivers are misled because Defendant labels Toddler Beginnings in a similar manner to its infant formula product. (Compl. ¶¶ 12-16). Plaintiff further alleges that

9

the similarity in the labeling of the two products "gives caregivers the incorrect impression that the Toddler Beginnings is nutritionally adequate for children over a year, even though their needs are different from infants." (Compl. ¶ 17). Plaintiff's primary basis for alleging that Toddler Beginnings "is advertised and marketed in a way that is similar to its Infant Formula" is the representation "infant formula with iron" on the front panel of the label. (Compl. ¶¶ 15-18). However, the inclusion of the phrase "infant formula with iron" on the label is required by the controlling FDA regulation. *See* 21 CFR 107.10(b)(4)(i).[3] Defendant's transition formula is plainly distinguished from its infant formula both by its name—Toddler Beginnings—as well as by its clear disclosure that the product is intended for children "9-18 months." (Compl. ¶ 12). Moreover, it is not sufficient for Plaintiff to merely imply that two products have similar labels to state a claim for relief under the GBL. Rather, a plaintiff must "actually identify a material misstatement or omission on the Product's label that would deceive a reasonable consumer." *Gordon*, 2022 WL 836773, at *10 (citing *Dixon v. Ford Motor Co.*, No. 14-CV-6135, 2015 WL 6437612, at *8 (E.D.N.Y. Sept. 30, 2015); *Horowitz v. Stryker Corp.*, 613 F. Supp. 2d 271, 287 (E.D.N.Y. 2009)).

Plaintiff cannot maintain a claim for violations of GBL §§ 349 and 350 based on the alleged similarity between the labels of Toddler Beginnings and Defendant's infant formula product.

### 2. Nutritional Value

Plaintiff criticizes the nutritional value of Toddler Beginnings by alleging—*inter alia*—that it contains "less protein, more sugar (carbohydrates) and more fat" compared to cow's milk. (Compl. ¶ 21). Plaintiff fails to allege that any specific representation on the Toddler Beginnings label was deceptive. This is fatal to her claim. Like the plaintiff in *Gordon*, here too Plaintiff

---

[3] Under 21 CFR 107.10(b)(4)(i), the statement "Infant Formula With Iron," or a similar statement, is required if the product contains 1 milligram or more of iron in a quantity of product that supplies 100 kilocalories when prepared in accordance with label directions for infant consumption.

"seems to take issue with the Transition Formula industry as a whole" rather than any specific representation on the Toddler Beginnings label. *Gordon*, 2022 WL836773, at *10. Defendant does not represent anywhere on the label that its transition formula is more nutritious than cow's milk. Nor does Defendant represent that its transition formula, on its own, is nutritionally adequate for toddlers. Any potential ambiguity about the nutritional value of Toddler Beginnings is dispelled by the disclosures contained on the ingredient list and nutritional information panel on the back and side panels of the label. *See Bynum v. Fam. Dollar Stores, Inc.*, 592 F. Supp. 3d 304, 311 (S.D.N.Y. 2022) (where a term on the front panel of a product label is ambiguous, "a reasonable consumer would read the ingredients list in order to clarify his or her understanding of the label"). Here, the side panel of the label clearly discloses that Toddler Beginnings "is intended to supplement the solid-food portion of the older baby's diet" and that it "is not intended to replace breast milk or starter formulas." (RJN, Ex. 1). Further, the back panel provides the precise breakdown of the amount of fat, carbohydrates, and protein contained in a serving of the transition formula. (*Id.*). "It is unreasonable—as Plaintiff attempts—to suggest that a consumer is not required to read a product's label to obtain information." *Gordon*, 2022 WL836773, at *10 (cleaned up). Given the specific disclosures on the back and side panels of the label, the Toddler Beginnings label would not mislead a reasonable consumer regarding its nutritional value.

Plaintiff cannot maintain a claim for violations of GBL §§ 349 and 350 based on alleged misrepresentations regarding the nutritional value of Toddler Beginnings.

### 3. Non-GMO

Plaintiff separately alleges that the Product's labeling is misleading with regard to its representation that the Product is "Non-GMO." (Compl. ¶ 29). Specifically, Plaintiff alleges that the "Non-GMO" representation is misleading because the product "is made from dairy ingredients

11

from cows which have consumed genetically modified feed." (*Id.*). The qualifying statement below the "Non-GMO" representation states that Toddler Beginnings is made with "ingredients not genetically engineered." (RJN, Ex. 1). Plaintiff does not allege that this statement is false. The label makes no representations at all regarding the animal feed consumed by cows from which dairy ingredients in the Product were derived. The "Non-GMO" representation is limited to the ingredients themselves and not, as Plaintiff suggests, every substance that those ingredients are derived from. *See Gordon*, 2022 WL 836773, at *12 (holding that the transition formula's "Non-GMO" representation was not materially misleading).

Plaintiff cannot maintain a claim for violations of GBL §§ 349, 350 based on alleged misrepresentations regarding the label's "Non-GMO" representation.

## CONCLUSION

For the foregoing reasons, the Court GRANTS Defendant's motion to dismiss Plaintiff's Complaint with prejudice.

The Clerk of the Court is respectfully directed to terminate the motion sequence pending at Doc. 30, and to close this case.

**SO ORDERED.**

Dated: White Plains, New York
February 16, 2023

_____
PHILIP M. HALPERN
United States District Judge